11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                          Order

 

 

Michael R. Feldman

Appellant

Vs.                   Nos.
11-02-00339-CR, 11-02-00340-CR, 11-02-00341-CR, 11-02-00342-CR,  

                       11-02-00343-CR, &
11-02-00344-CR -- Appeals from Dallas County

State of Texas

Appellee

 

Our former opinion and judgments dated December
18, 2003, are withdrawn, and our opinion and judgments dated February 5, 2004,
are substituted therefor.

 

PER CURIAM

 

February 5, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Arnot,
C.J., and

Wright,
J., and McCall, J.

 

 








                                                             11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Michael R. Feldman

Appellant

Vs.                   Nos.
11-02-00339-CR, 11-02-00340-CR, 11-02-00341-CR, 11-02-00342-CR,  

                       11-02-00343-CR, &
11-02-00344-CR -- Appeals from Dallas County

 

State of Texas

Appellee

 

In a single trial, the jury convicted Michael R.
Feldman as charged in six separate informations of
the offense of violating a protective order. 
The trial court assessed punishment in each case at confinement for 365
days and a $150 fine, but the court suspended the imposition of the sentence
and placed appellant on community supervision for 2 years.  We reverse and render in Cause Nos.
11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR; and we affirm in Cause Nos.
11-02-00342-CR, 11-02-00343-CR, and 11-02-00344-CR.  

In Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and
11-02-00341-CR, appellant has briefed four points of error.  In the other three causes, appellant presents
three points of error.  The first three
points of error in all six briefs are similar. 
In the first point, appellant contends that the evidence is legally
insufficient to prove that he had notice of the existence of the protective
order.  In the second point, appellant
asserts that the trial court erred in denying appellant=s
request for a jury instruction on the issue of notice.  In the third point, appellant argues that the
trial court erred in failing to instruct the jury on all of the elements of the
offense as provided for in TEX. PENAL CODE ANN. ' 25.07 (Vernon 2003).  In the fourth point, appellant contends that
the evidence is legally insufficient to prove that his conduct amounted to a
communication under Section 25.07.  








In order to address the legal sufficiency points,
we must review all of the evidence in the light most favorable to the verdict
and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex.Cr.App.2000).  Section
25.07(a)(2) provides in relevant part that a person
commits an offense if, in violation of a protective order, the person knowingly
or intentionally Acommunicates@: 


(A) directly with a
protected individual or a member of the family or household in a threatening or
harassing manner; [or]

 

(C) in any manner with the protected individual or
a member of the family or household except through the person=s attorney or a person appointed by the
court, if the order prohibits any communication with a protected individual or
a member of the family or household. 

 

Appellant was charged in Cause Nos. 11-02-00339-CR,
11-02-00340-CR, and 11-02-00341-CR with violating a protective order by
communicating via letter with his son, Samuel Feldman.  Appellant was charged in Cause Nos.
11-02-00342-CR, 11-02-00343-CR, and 11-02-00344-CR with violating a protective
order by communicating via letter with his ex-wife, Robin Feldman, in a
threatening and harassing manner.  

The record shows that the Superior Court of King
County, Washington, issued a protective order on January 20, 1999.  Although appellant was not present at the
hearing in which the protective order was granted, appellant=s attorney was present.  Appellant=s
attorney signed the order, acknowledging that he received a copy.  While the protective order was in effect,
appellant sent letters addressed to Samuel. 
The content of the letters indicated that appellant was aware that Robin
would be reading them.  In the letters,
appellant made many extremely derogatory remarks about Robin and also made such
threatening and harassing comments as: AI
am surprised your mother didn=t
do to you what Susan Smith did to her two young sons@; AShe
is ruining your life and depriving you of a father and his family.  This creature [Robin] must be stopped@; ASome day things will change and she will get her due@; A[S]he
knew I would kill her if she murdered my child!@;
and AWhen you
study about World War II and Hitler, you will understand how if the only Jews
Hitler meant were like the creature [Robin], he would want to kill all Jews.@ 
Robin did not allow Samuel to see or read the letters from
appellant.  








In his first point of error, appellant contends
that there is no evidence that he had notice of the existence of the
order.  However, the terms of the
protective order were agreed to by appellant=s
attorney, who signed the order and acknowledged that he received a copy of the
order.  Furthermore, while appellant, an
attorney, was cross-examining Robin, he asked the following questions:  

Q: And didn=t I state -- do you know from your personal
knowledge, I stated that I was afraid to go to the State of Washington because
I feared you would have me arrested? 

 

A: I believe you stated that.

 

Q: And, in fact, as we already mentioned, you=ve got an
order of protection in the State of Washington 10 days prior to the time that I
was supposed to first go, correct?

 

A: Yes.  

 

The Texas Court of Criminal Appeals has concluded
that the only requirement with respect to this issue is that the defendant:

[B]e
given the resources to learn the provisions; that is, that he be given a copy
of the order, or notice that an order has been applied for and that a hearing
will be held to decide whether it will be issued.  The order is nonetheless binding on the
respondent who chooses not to read the order, or who chooses not to read the
notice and the application and not to attend the hearing. 

 

Harvey v. State, 78 S.W.3d 368, 373
(Tex.Cr.App.2002).  In this case,
notice that a protective order had been sought was shown through appellant=s representation at the hearing by his
attorney.  Furthermore, appellant=s knowledge of the existence of the
protective order was shown through his questioning of Robin.  We hold that the evidence is sufficient to
establish the requisite knowledge.  See
Harvey v. State, supra. 
Appellant=s first
point of error is overruled.  

In his fourth point, appellant contends that there
is no evidence that he communicated with Samuel.  With respect to Cause Nos. 11-02-00339-CR,
11-02-00340-CR, and 11-02-00341-CR, the informations
charged that appellant did:  

[T]hen
and there intentionally and knowingly communicate directly and indirectly with
SAMUEL FELDMAN...in that the defendant communicated via a letter with
complainant, in violation of an order issued by the Superior Court of King
County, Washington.

  








ACommunication@ was defined in the jury charge as Ainformation given, the sharing of
knowledge by one another; conference; consultation or bargaining preparatory to
making a contract.  Intercourse;
connection.@  That definition was taken from BLACK=S LAW DICTIONARY.  The common meaning of Acommunicate@ is Ato
make known@ or Ato pass from one to another.@ 
THE MERRIAM-WEBSTER DICTIONARY 163 (1997).  There is no evidence indicating that Samuel
received, read, or even knew about the letters. 
Consequently, appellant did not Acommunicate@ with Samuel.  Although appellant clearly attempted
to communicate with Samuel, appellant was neither charged with nor convicted of
attempting to violate the protective order with respect to Samuel.  Furthermore, although Section 25.07(a)(2)(C) makes it an offense to communicate with a member of
the protected person=s
household or family, appellant was not charged with violating the protective
order by communicating with a member of Samuel=s
household.  Because the informations did not allege that appellant committed an
offense by communicating with a member of Samuel=s
family or household, a jury charge on that basis would not have been Aauthorized by@
the information and, thus, would not have been included in the hypothetically
correct jury charge in these cases.  Gollihar v. State, 46 S.W.3d 243, 253-56
(Tex.Cr.App.2001); Curry v. State, 30 S.W.3d 394, 404-05
(Tex.Cr.App.2000); Planter v. State, 9 S.W.3d 156 (Tex.Cr.App.1999); Malik v. State, 953 S.W.2d 234, 240
(Tex.Cr.App.1997).  The evidence, as
measured by the hypothetically correct jury charge, is insufficient to support
the jury=s
verdicts in Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR.  Therefore, we must sustain the fourth point
of error and reverse the convictions in which Samuel was the complainant:  Cause Nos. 11-02-00339-CR, 11-02-00340-CR,
and 11-02-00341-CR. 

In his second point of error, appellant contends
that the trial court erred by denying his request for a jury instruction on the
issue of notice.  Appellant requested the
following instruction:  A[U]nless the
Defendant is aware of what he is prohibited from doing by a specific court
order he cannot be guilty of knowingly and intentionally violating that court
order.@  The trial court denied appellant=s request.  

In Harvey, the court stated that, in a
trial for the violation of a protective order, the jury charge Ashould include a definition of the term
>in violation of an order issued
under=@ the applicable statutes.  Harvey v. State, supra at
373.  The court defined the term as:

[I]n
violation of an order that was issued under one of those statutes at a
proceeding that the defendant attended or at a hearing held after the defendant
received service of the application for a protective order and notice of the
hearing.

 








Harvey v. State, supra at 373.  The court also stated that, as defined, that
term Ais in
effect a requirement of a culpable mental state for that element.@ 
Harvey v. State, supra at 373.  Although the protective order at issue in Harvey
differed from the one at issue in this case because it was not issued by
another jurisdiction, the Harvey court noted that it had not overlooked
protective orders that were issued by other jurisdictions.  The Harvey court reasoned that other
jurisdictions Alikely@ had similar notice provisions.  We hold that the trial court in the present
case erred by failing to include a definition similar to the one required by
the court in Harvey.  

Although appellant=s
requested instruction was a misstatement of the law under Harvey, it was
sufficient to apprise the trial court of the omission
in the charge and, thus, was sufficient to preserve the error for appellate
review.  See Francis v. State,
36 S.W.3d 121, 123 (Tex.Cr.App.2000); Chapman v. State, 921 S.W.2d 694
(Tex.Cr.App.1996); Stone v. State, 703 S.W.2d 652, 655
(Tex.Cr.App.1986); see also TEX. CODE CRIM. PRO.
ANN. art. 36.15 (Vernon Supp. 2003).  Consequently, we must determine if the error Awas calculated to injure the rights of
defendant,@ meaning
that reversal is required if the accused suffered Asome
harm@ from the
error.  TEX. CODE CRIM.
PRO. ANN. art. 36.19 (Vernon 1981);  Almanza
v. State, 686 S.W.2d 157, 171 (Tex.Cr.App.1985).  The actual degree of harm caused by the error
must be determined in light of the entire jury charge; the state of the
evidence, including the contested issues and the weight of the probative
evidence; the argument of counsel; and any other relevant information revealed
by the record.  Almanza
v. State, supra.  








We hold that the error was not calculated to
injure appellant=s
rights.  Pursuant to the standard set out
in Harvey, appellant need not have attended the hearing or actually been
served with the protective order. 
Appellant must merely have known that an order had been applied for and
that a hearing was scheduled.  The
evidence in this case clearly showed that appellant was aware that  Robin had
applied for a protective order, that a hearing was scheduled and held, and that
appellant was represented by his attorney at the hearing.  The only question with respect to this issue
was whether appellant actually had knowledge of the specific provisions in the
order.  Such specific knowledge, however,
is not a requirement of the culpable mental state for the offense of violation
of a protective order.  Harvey v.
State, supra at 373.  After
reviewing the entire jury charge, the evidence, the contested issues, and the
jury arguments, we conclude that the omission in the jury charge did not cause Asome harm@
to appellant.  Appellant=s second point of error is
overruled.  

In his third point of error, appellant argues that
the trial court erred by failing to charge the jury on all of the elements of
the offense.  Appellant=s complaint concerns the failure of the
application portion of the jury charge to include the requisite culpable mental
state.  The jury charge in each case
reads in relevant part:

You are instructed that our law provides that a
person commits an offense if, in violation of an order issued under [the
relevant statutes], the person intentionally or knowingly communicates in any
manner with the protected individual or a member of the family or household
except through the person=s
attorney or a person appointed by the court, if the order prohibits any
communication with a protected individual or member of the family or
household.  

 

                                                          *     *    
*

 

Now, if you find and believe from the evidence
beyond a reasonable doubt that the defendant...did unlawfully then and there
intentionally or knowingly communicate directly or indirectly with
[Robin/Samuel] by writing a letter to [Robin/Samuel], a protected individual,
defendant=s said
actions were in violation of a court order, to-wit: a protective order...you
will find the Defendant guilty as charged in the Information.  

 








While we agree with appellant that the application
portion of the jury charge was erroneous, we note that appellant did not object
at trial to that portion of the jury charge. 
Therefore, pursuant to Almanza and
Article 36.19, we must review the entire jury charge, the evidence, the
arguments of counsel, and any other relevant information in order to determine
whether the error was so egregious that appellant was denied a fair
and impartial trial.  We cannot
find under the circumstances of this case that the error was egregious.  See Lane v. State, 957 S.W.2d 584, 587
(Tex.App. - Dallas 1997, pet=n
ref=d)(concluding
that the failure to include a culpable mental state in an application paragraph
did not deny the defendant a fair and impartial trial when the defendant=s culpable mental state was not a
contested issue).  It is clear from the
record that appellant had the culpable mental state that was required by Harvey.  Appellant, at a minimum, had knowledge that a
protective order had been sought. 
Appellant was represented by his attorney at the hearing on the
protective order.  Furthermore, appellant=s questioning of Robin appears to
acknowledge that he was aware of the order and that he did not visit Samuel in
Washington because he feared that he would be arrested.  Appellant=s
third point of error is overruled.  

The trial court=s
judgments in Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR are
reversed; and we render a judgment of acquittal in those cases.  The judgments of the trial court in Cause Nos.
11-02-00342-CR, 11-02-00343-CR, and 11-02-00344-CR are affirmed.  

 

PER CURIAM 

 

February 5, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b). 

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.